**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 1 6 2023

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

MICHAEL FAULKNER,                )    Case No. 2:23CV00210-LPR-JTR
                                 )
              Petitioner,        )
                                 )
     -vs-                        )
                                 )
WARDEN FCI FORREST CITY MEDIUM,  )
                                 )
              Respondent.        )

PETITIONER'S MEMORANDUM IN SUPPORT

     I, Michael B. Faulkner, Petitioner herein, proceeding *pro
se*, herewith file this *Memorandum in Support* of my petition to
this Court to issue a writ of *habeas corpus* to Respondent
Warden, FCI Forrest City Medium (in the capacity as Warden of
the Federal Correctional Institution at Forrest City, Arkansas,
only). I seek issuance of the writ to command Respondent to
appear and show by what right I have been deprived of 41 days of
good conduct time. This petition is brought pursuant to 28
U.S.C. § 2241.

### I.  History[1]

1.   At all times material to this *Petition,* I was confined at FCI Texarkana, in Texarkana, Texas. On September 28, 2022, a BOP correctional officer assigned duties in the Bureau of Prisons Special Investigative Supervisor's (SIS) office, Mr. Buffington, conducted a cell search of Cell F03·268, which was assigned to Inmates Wesley Wilson, Reg. No. 12174-062; Edward Gray, Reg. No, 12733-030; and me. In a homemade tray hidden above the ceiling light fixture, Mr. Buffington found items constituting contraband, including three Samsung cell phones, a Netgear mobile hotspot device, an Apple iPod Touch mp3 player, two other MP3 players not registered to be used on the approved BOP inmate MP3 system, 50 flat books of 20 first-class stamps each, five UBS thumb drives, 17 Micro SD cards, 12 cellphone SIM cards, a razor blade, three sets of headphones and several charging cables.

2.   Inmates Wilson, Gray and I were detained in the Institution's Special Housing Unit. During an interview by the investigating staff, the BOP reported, Inmate Wilson voluntarily admitted to using all three cell phones. The BOP Incident Report (**Exhibit 1**) said that Mr. Wilson "was only able to provide the

---

[1]   All of the foregoing facts, unless otherwise indicated, were derived from the BOP report of the incident set out in the Incident Report, attached as **Exhibit 1**.

PIN number for one of the phones and could not access the other two cellphones." However, Mr. Wilson signed a document entitled "Affidavit"[2] dated the same day as the Incident Report was subscribed to by Mr. Buffington. That "Affidavit" stated:

> [r]egarding the contraband electronics found in F-Unit cell on 9-23-2022 at FCI Texarkana, neither of my two roommates, Michael Blaine Faulkner, or Edward Eugene Gray junior, ever used or possessed any of these items.
>
> I managed the "stash spot" and held contraband electronics for myself and a number of other inmates in E and F units.
>
> I accept full and complete responsibility for these contraband items.

**Exhibit 2.**

3.    At all times, both Mr. Gray and I denied that we had ever had ownership in or possession of the contraband. *See* Discipline Hearing Officer Report (hereinafter "DHO"), attached as **Exhibit 3.** Despite our repeated and consistent denials and Mr. Wilson's sworn statement, the Incident Report "determined since all the cell phones were found In a common area of the cell and Inmate Wilson could not prove all the phones belonged to him, all Inmates [in the cell, being Wilson, Gray and I] will receive an Incident report for code 108." *Incident Report,* **Exhibit 1.**

---

[2]    The document is an unsworn declaration that complies with 28 U.S.C. § 1746. *See Affidavit,* attached as **Exhibit 2.**

4.    I was charged with committing a Prohibited Act 108 (28 CFR § 541.3), which proscribes the "[p]ossession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.,* hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device)." **Exhibit 1**.

5.    On November 17, 2022, I was afforded a hearing before a Disciplinary Hearing Officer. Inmate Wilson and I were the only witnesses. For the BOP's position, the Officer relied on the Incident Report and Investigation set out as **Exhibit 1**, and photographs taken of the contraband and the hiding place above the ceiling light.

6.    The DHO Report found that I was guilty of the infraction:

> In deciding the Issue, the DHO considered the reporting officer's eyewitness account In section 11 of the Incident report noting while conducting a search of your assigned living area Inside a light fixture a homemade tray was discovered containing, 3) Samsung cell phones, (1) Netgear hot spot, (1)!Pod touch, (2) unregistered MP3 players, (50) flat book stamps, (5) UBS thumb drives, (17) Micro SD cards, (12) SIM cards, (1) razor blade, (3) sets of headphones and several charging cables. Since all the contraband was located In a common area, all Inmate's *[sic]* assigned to the cell received an Incident

report. During the SIS Investigation Inmate Wilson
stated all the contraband belonged to him and he
provided the code for one of the cell phones. He then
stated he did not have the codes to access the other
phones but everything was his. Once SIS informed
Inmate Wilson his cellies would be receiving an
incident report because he could not prove the other
two cell phone [sic] belonged to him, he then changed
his story to say he was holding the two phones for
other Inmates that lived in the housing unit. He
submitted a written statement to the DHO stating, "I
managed the "stash spot," and held contraband
electronics for myself and a number of other Inmates
In E and F unit." Inmate Wilson was called as a
witness during the DHO hearing and he stated, "Only 1
of the phones belonged to me. 2 of the other phones
belonged to other Inmates In the unit." The DHO
considered your statement during the Investigation,
"All electronics belong to Wilson."[3]

The DHO considered your statement during the UDC
hearing, "I had no contact with Inmate Wilson's
electronics." The DHO considered your statement during
the OHO hearing, "The cell phones don't belong to me."
The DHO advised you because Inmate Wilson changed his
statement multiple times during the course of the
Inmate discipline process, this lessoned [sic] his
credibility before the DHO. The DHO notes, because
Inmate Wilson admitted two of the cell phones belonged
to other Inmates, there is no way for the DHO to
determine who they belonged too [sic]. The fact the
cell phones were found in a common area of the cell,
makes all the Inmates living there responsible.
Program Statement 5270.09, Inmate Discipline Program,
states, "It Is your responsibility not to waste food,
to follow the laundry and shower schedule, maintain
neat and clean-living [sic] quarters, to keep your
area free of contraband, and to seek medical and
dental care as you may need it." Your assigned cell is
under your dominion and control. Therefore, the
Inmates assigned to a cell are all responsible to keep
the area free of contraband. Finally, the DHO
considered the photographic picture Illustrating the

---

[3]    I have added a paragraph break at this point  for
clarity. The original DHO finding is a single block of text. *See*
**Exhibit 3.**

3) Samsung cell phones, (1) Netgear hot spot, (1) iPod touch, (2) unregistered MP3 players, (50) flat book stamps, (5) UBS thumb drives, (17) Micro SD cards, (12) SIM cards, (1) razor blade, (3) sets of headphones and several charging cables.

Therefore, the DHO finds the greater weight of the evidence Is sufficient to support you committed the prohibited act of Possession of a Hazardous Tool -Cell Phone, Code 108.

**Exhibit 3.**

## II.    **Exhaustion**

7.    I timely exhausted my administrative remedies, through filing a BP-10 with the Regional Director on or about December 5, 2022. **Exhibit 4**. The Regional Administrator denied my appeal by an order dated February 13, 2023, but delivered to me on March 28, 2023 (meaning that the response traveled the 172 miles from the Regional Office at Grand Prairie, Texas, to me at FCI Texarkana, at an average speed of 1/6th of a mile per hour, serving me with the answer required 43 days from issuance to receipt. By comparison, the slowest turtle on earth, the giant tortoise, crawls at 0.17 mph, slightly faster than the 16.72 mph speed of delivery.[4] *See* evidence of delivery and receipt, attached as **Exhibit 5**, p.1.

8.    The response to the BP-10 stated in relevant part:

---

[4]    *The Slowest Turtle In The World* (Reptiles Hub, January 25, 2023), found at https://reptileshub.com/how-fast-are-turtles/ (last accessed July 6, 2023).

You allege you did not commit the prohibited act. You assert that the DHO did not listen to the evidence you presented at the hearing which cleared you of the charge. Specifically, you state your witness claimed ownership of all the electronics that were found in your cell. A review of the record revealed the witness did indeed claim ownership of the electronics, however, the DHO gave the greater weight to other evidence provided by the institution. The other evidence, which included witness and staff statements, the SIS Investigative report, and the electronics.*[sic]* There was no violation of due process.

The DHO adequately detailed the evidence relied upon to conclude you committed the prohibited act. The DHO relied upon sufficient evidence in reaching this conclusion. The sanctions imposed are within policy and commensurate with the finding you committed the prohibited act. Further, you did not provide any additional evidence to support your allegation..

*See* Regional Director Response, attached as **Exhibit 5**.

9.   Thereafter, I filed a Central Office remedy on or about April 4, 2023. Therein, I argued that the "common area" of an inmate's living space includes all those spaces in which every inmate in the living space has a nonexclusive right to occupy.  The contraband electronics were located inside a light fixture, a space that an inmate is not authorized to be.  *See Prohibited Acts* 208, 218, 318.  The inside of a light fixture is no more "common area" than would be the inside of a telephone or inside the wall behind a shower fixture. I also argued that the DHO report holding that "because inmate Wilson admitted that two of the cell phones belonged to other inmates, there is no way for the DHO to determine who they belonged too *[sic]*…" lacked any indicia of reliability. *See* Exhibit 6.

10.   Well more than 60 days have elapsed since I filed. The
Central Office has not responded, permitting this Court and me
to conclude that my appeal is denied.   *See* 28 CFR 542.18.

### III. Grounds for Grant of Habeas Corpus

**Ground 1:** The DHO rejected an unrebutted
admission against interest from another
inmate admitting to ownership and
possession of the cellphones

**Ground 2:** The DHO relied on evidence not in the
record to find Petitioner guilty of the
infraction

**Ground 3:** The DHO's conclusion that Petitioner
committed the prohibited acts was not
based on reliable evidence, thus
violating Petitioner's due process
rights

### IV.   Argument

**Ground 1: The DHO rejected an unrebutted
admission against interest from another
inmate admitting to ownership and
possession of the cellphones**

11.   It is settled beyond reasonable dispute that a
tribunal charged with fact-finding must make credibility
findings only after seeing and hearing the witness's testimony
in order to comport with the Fifth Amendment.   *See, e.g., United
States v. Alvarado-Rivera*, 412 F.3d 942, 952 (8th Cir. 2005) (In
order to satisfy due process a credibility finding must be "made
by a judge who had seen and heard the testimony"); *compare*

*Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported... can the finding be reversed."); *Conner v. Colvin*, Case No. 12 C 04014 (N.D. Ill. May 2, 2014), 2014 U.S. Dist. LEXIS 61576, at *33 ("credibility finding based "on observations that are unreasonable and unsupported" must be rejected.

12.    The offense with which I was charged was *possession* of a cellphone. Possession is either actual (a person who knowingly has direct physical control over a thing at a given time) or constructive (a person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.) *United States v. Hopkins*, 428 Fed.Appx 658, 659 (8th Cir. 2011).  Clearly, the DHO found that I had constructive possession of the cellphones.

13.    At the time of the incident, Mr. Wilson told SIS officers that he had possessed the three cellphones. **Exhibit 1.** Subsequently, he admitted that he possessed them but only owned one of them, and that he was possessing the other two essentially as a bailee for two inmates other than Mr. Gray and me. *Id.*  In his "Affidavit" attached as **Exhibit 2,** he again admits to possessing the phones while denying that Mr. Gray or I

ever possessed them. He admits that he was holding electronics for "a number of other inmates" in Units E & F.  Finally, at the DHO hearing, he testified that "[o]nly 1 of the phones belonged to me. Two of the other phones belonged to other Inmates In the unit." **Exhibit 3**.

14.  Mr. Wilson's statements that he possessed the phones while Mr. Gray and I did not have been consistent from the date the phones were seized until the day of the DHO hearing.  But the DHO found that "[d]uring the SIS Investigation Inmate Wilson stated all the contraband belonged to him and he provided the code for one of the cell phones. He then stated he did not have the codes to access the other phones but everything was his. Once SIS Informed Inmate Wilson his cellies would be receiving an incident report because he could not prove the other two cell phone [sic] belonged to him, he then changed his story to say he was holding the two phones for other inmates that lived in the housing unit."  **Exhibit 3**.  There is utterly no evidentiary support for this finding, a matter I will discuss *infra*. But assuming for a moment that the DHO's finding has evidentiary support, the finding nevertheless conflates ownership and possession. Mr. Wilson has consistently claimed possession. It is only that SIS demanded to know the ownership of the phones as well, and he was unwilling to identify the actual owners by declaring ownership himself.

15.   The SIS Report did not suggest any prevarication on Mr. Wilson's part. Rather, it simply found that Mr. Wilson "could not prove all the phones belonged to him…" **Exhibit 1.** The SIS officer wanted to show both ownership *and* possession. Mr. Wilson has consistently admitted to possession. He just could not prove that he was the owner of the other two as well. He consistently submitted that the owners and other possessors were not Mr. Gray and me.

16.   What it comes down to is that Mr. Wilson was unwilling to implicate others, and therefore, the DHO is compelled to speculate that Mr. Gray and I – as Mr. Wilson's cellmates – to have possessed the cellphones. And that's all that it is, speculation. The DHO Officer acknowledges that SIS had previously threatened Mr. Wilson that Mr. Gray and I would be charged unless he identified the owners of the phone. He did not identify the owners, and SIS did exactly that. The DHO Report candidly concedes that "because Inmate Wilson admitted two of the cell phones belonged to other Inmates, there is no way for the DHO to determine who they belonged too *[sic]*." Yet after this surprising admission, the DHO nevertheless decides to adversely impact my liberty interest simply because the DHO does not know who to blame. This is the perfect illustration of an "observation[] that [is] unreasonable and unsupported." *Conner, supra.*

17.  It is settled law that constructive possession – which is how the BOP found I committed Prohibited Act 108 – must be knowing and intentional. *Hopkins*, *supra*; *United States v. Gonzalez*, 570 F.3d 16, 25 (1st Cir. 2009) ("[R]egardless of how the government established possession, it still had to prove that it was knowing and intentional. Moreover, the court's description of constructive possession specifically included the requirement that defendant have the 'power, ability, and *intention* to exercise control over [the substance]" (emphasis added). It is unclear to us how a defendant could intentionally exercise control over an object without doing so 'knowingly'"); *United States v. Scott*, 424 F.3d 431, 435-36 (4th Cir. 2005) ("When the government seeks to establish constructive possession under § 922(g)(1), it must prove that the defendant intentionally exercised dominion and control over the firearm, or had the power and the intention to exercise dominion and control over the firearm"); *United States v. Gunn*, 369 F.3d 1229, 1235 (11th Cir. 2004) (same holding); *United States v. Gaines*, 295 F.3d 293, 301 (2d Cir. 2002) (same holding); *United States v. Walls*, 225 F.3d 858, 866-67 (7th Cir. 2000) (same holding); *United States v. Terry*, 911 F.2d 272, 279-80 (9th Cir. 1990) (same holding); and *United States v. Eaton*, 257 U.S. App. D.C. 177, 808 F.2d 72, 74 (D.C. Cir. 1987).

18.   Nowhere did Mr. Wilson ever contradict his initial admission, one which was manifestly against his liberty interests. He admitted to always having been in possession of the cellphones and to ownership of one of them. He also stated under oath that neither Mr. Gray nor I ever possessed them. Questions about cellphone ownership, while of interest to SIS, were not relevant to the Prohibited Act charged. I was charged with possessing phones I had never possessed and never had an interest in possessing. Mr. Wilson's testimony was the only evidence that went to the elements of the prohibited act, and that evidence consistently exonerated me.[5]

### Ground 2: **The DHO relied on evidence not in the record to find Petitioner guilty of the infraction**

19.   The DHO Report states that only the Incident Report and Investigation, photos taken of the contraband, testimony of Mr. Wilson and his "affidavit," and my statements were considered. The Report denies that any "[c]onfidential information was used by DHO in support of his findings, but was not revealed to the inmate." DHO Report, §3E, **Exhibit 3.**

---

[5]    SIS never reported any physical evidence – such as fingerprints or call records – that would link any of the phones to Mr. Gray and me. No evidence ever supported a notion that either Mr. Gray or I actually or constructively possessed the devices.

20.   The DHO Report asserts that "[o]nce SIS informed Inmate Wilson his cellies would be receiving an incident report because he could not prove the other two cell phone *[sic]* belonged to him, he then changed his story to say he was holding the two phones for other Inmates that lived in the housing unit." **Exhibit 3**.   However, this averment is never made by SIS in any of the evidence provided to me or in the record, and – given that there is no evidence that was not provided to me – the assertion the DHO makes that Mr. Wilson changed his story when SIS threatened to charge Mr. Gray and me with possession if he did not (and if he did not give up the actual owners of the cellphones) is without evidentiary foundation.

21.   In short, there is no basis whatsoever to question Mr. Wilson's credibility when he takes the blame for possessing the cellphones – blame that he certainly knew would harm his liberty interest – and exonerates Mr. Gray and me.   Mr. Wilson's statements are the only evidence in the record going to the question of whether Mr. Gray or I attempted to or intended to exercise dominion or control over the cellphones.   And that evidence is resoundingly in our favor.

22.   The DHO had no basis for the credibility finding made as to Mr. Wilson's testimony.

23.   Findings on the credibility of a witness's statements
"cannot be based on an intangible or intuitive notion about an
individual's credibility. The reasons for the credibility
finding must be grounded in the evidence and articulated in the
determination or decision." *Kelly v. Colvin*, No. 14 C 1086 (N.D.
Ill. Aug. 10, 2015), 2015 U.S. Dist. LEXIS 104301, at *27); *see
also Shah v. INS*, 220 F.3d 1062, 1069 (9th Cir. 2000) (finding
that plaintiff's testimony was implausible in light of the
country conditions "was insufficient to support a negative
credibility finding because it was a blanket statement without
individualized analysis, and it was based on conjecture and
speculation"); *Singh v. Holder*, 523 Fed.Appx 495, 497 (9th Cir.
2013) (rejection of testimony as implausible – where plaintiff
said he had truthfully told the police at a checkpoint in his
home country that he was coming from a party meeting because he
did not believe police outside of his hometown would care about
his party business "was at least plausible, and the [judge's]
conclusion that the explanation was implausible was based on
impermissible speculation") citing *Zhou v. Gonzales* 437 F.3d
860, 865 (9th Cir. 2006) (speculation and conjecture "cannot
serve as a reason for an adverse credibility finding").

24.   Here, the physical evidence – multiple cellphones,
charging cables, an Internet hotspot, many SD cards, several MP
players, and, most significant, 15 SIM cards – is fully

consistent with Mr. Wilson's statement that he was essentially running a "contraband checkroom" for a number of other inmates who did not want contraband electronics found in their possession. Nothing he stated to SIS or in his "affidavit" contradicted the implications of the physical evidence. Rejection of her testimonial affidavit because the DHO Officer had his own speculation as to what Mr. Wilson might have told SIS deprived me of my due process right.

> **Ground 3: The DHO's conclusion that Petitioner committed the prohibited acts was not based on reliable evidence, thus violating Petitioner's due process rights**

25.   The fundamental requirement of due process "is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation and internal quotation marks omitted). This opportunity is meaningless if the DHO constructively amends the elements of the charge.

26.   A "fair trial in a fair tribunal is a basic requirement of due process. . . . This applies to administrative agencies which adjudicate as well as to courts." *Withrow v. Larkin,* 421 U.S. 35, 46 (1975) (citations omitted) (combination of investigative and adjudicative functions does not necessarily show a biased decision-maker); *see also Morrissey v. Brewer*, 408

U.S. 471, 489 (1972) (due process requires neutral and detached
decision-maker for parole revocation hearing). "To sustain a
claim of [a decision-maker's misconduct], there must be an
extremely high level of interference by the [decision-maker]
which creates a pervasive climate of partiality and unfairness."
*Duckett v Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (internal
quotations and citation omitted).

    27.  After admitting that Prohibited Act 108 requires that
an inmate have possessed the cellphone – that is, "have on one's
person or under one's dominion or control," *DHO Report,* **Exhibit
3,** the DHO Officer departs on a legal frolic untethered to the
charge:

> The fact the cell phones were found in a common
> area of the cell, makes all the Inmates living
> there responsible. Program Statement 5270.09,
> Inmate Discipline Program, states, "It Is your
> responsibility not to waste food, to follow the
> laundry and shower schedule, maintain neat and
> clean-living *[sic]* quarters, to keep your area
> free of contraband, and to seek medical and
> dental care as you may need it." Your assigned
> cell is under your dominion and control.

**Exhibit 3.**  But as I have described *supra,* constructive
possession requires knowledge that the contraband is present and
intention to possess it. The DHO Officer suggests that whether
Mr. Gray or I intended to have anything to do with Mr. Wilson's
electronics  or indeed, whether we even knew the electronics

were present, is not relevant to the charge.  He thus guts constructive possession of its common meaning.

28.  In so doing, the DHO finds liability for one of the most serious of BOP Prohibited Acts – one which is effectively punished by imprisonment (because the violation leads to a longer time in prison than would otherwise be the case)– because I was assigned to that cell and my "assigned cell is under your dominion and control."

29.  First, the contraband was found in an area above a light fixture, an area that was prohibited to inmates. *See Prohibited Acts* 208, 218, 318.  The "common area" of an inmate's living space includes all those spaces in which every inmate in the living space has a nonexclusive right to occupy.  The contraband electronics were located inside a light fixture, a space that an inmate is not authorized to be.   The contraband could only be located by climbing up to the area, an act that would require them to break prison rules to be in that area. Above a light fixture is outside the area for which Mr. Gray or I was responsible. By enforcing the regulations and program statement as the DHO suggests it should be enforced, the BOP would require them to break the rules regarding boundaries within the institution.

30.   Second, where the only evidence going to knowledge or intent denies that Mr. Gray or I had such knowledge or intent, the DHO Officer cannot find a way to hold me liable for constructively possessing something because I have "dominion and control" over my cell. First, the notion that any prisoner has "dominion and control" of a cell he can be removed from at a moment's notice and which may be entered and searched for any reason at all (or without a reason) is dubious. Beyond that, the DHO Officer warps the *Program Statement* 5270.09, Inmate Discipline Program, which states an inmate is responsible "to keep your area free of contraband" right after it refers to "living quarters" and "area." So what is "area"? An inmate's bed, his desk (if he has one), his locker? By differentiating between "living quarters" and "area" in the same sentence, the Program Statement hardly lays down a rule that an inmate's "assigned cell is under your dominion and control," and he is liable for any contraband in that cell, whether he knows of it or not.

31.   Constructive possession requires knowledge that the contraband is present and an intention to exercise dominion over it. Knowledge and intent are both issues of fact. *LG & E Cap. Corp. v. Tenaska VI, L.P.*, 289 F.3d 1059, 1069 n.4 (8th Cir. 2002).   When the DHO finds knowledge and intent through some hypothesis that a cell is under an inmate's dominion and

control, and thus anything in the cell is in the inmate's constructive possession as a matter of law, the Officer has substituted a rump legal theory for reliable evidence.

32.    Evidence supporting a prison disciplinary sanction that deprives an inmate of a protected liberty interest must have some indicia of reliability. "Some evidence" that is fantastical or directly rebutted by exculpatory evidence is essentially no evidence at all. *Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001) ("The 'some evidence' standard is met where the only evidence was supplied by a confidential informant as long as there has been some examination of indicia relevant to [the informant's] credibility.") (internal quotation marks omitted); *Meeks v. McBride*, 81 F.3d 717 (7th Cir. 1996) (holding that the "some evidence" standard was not satisfied when the toxicology report showing drug use contained the wrong inmate identification number and another inmate in the same facility had the same name); *Zavaro v. Coughlin*, 970 F.2d 1148 (2d Cir. 1992) (reversing disciplinary sanction that was based on "no reliable evidence whatsoever" that inmate participated in cafeteria riot).

33.    As the Supreme Court stressed in *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985), however, the "some evidence" standard does not impose a rigorous level of due process review:

> This standard is met if there was some evidence from
> which the conclusion of the administrative tribunal
> *could* be deduced. Ascertaining whether this standard
> is satisfied does not require examination of the
> entire record, independent assessment of the
> credibility of witnesses, or weighing of the evidence.
> Instead, the relevant question is whether there is *any*
> evidence in the record that *could* support the
> conclusion reached by the disciplinary board.

*Id.* at 472 U.S. at 455-56 (emphasis added, cleaned up). *See also*

*id.* at 472 U.S. 455 (requiring a "modicum of evidence"); and *id.*

at 472 U.S. 457 ("The record is not so devoid of evidence that

the findings of the disciplinary board were without support or

otherwise arbitrary.").

34.   Nevertheless, the "some evidence" standard requires

some "reliable evidence." *Sira v. Morton*, 380 F.3d 57, 69 (2nd

Cir. 2004), *citing Luna v. Pico*, 356 F.3d 481, 488 (2nd Cir.

2004) and *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2nd Cir.

2001). And even in *Superintendent, supra,* the record included

the testimony under oath of the complaining Officer. To take the

inmate's emphatic denial, explanation of the physical

impossibility of the allegation having happened, and demand for

video evidence, and to hold that the incident report, prepared

by an absent witness, is more reliable because... well, it just

is... turns the "some evidence" on its head. If the written

incident report trumps whatever evidence the inmate presents,

then the hearing is rendered nugatory.

35.   The evidence in this case is insufficient to comply with the "some evidence" standard. I am accused of constructively possessing a cellphone for which there is neither physical evidence, electronic evidence, visual evidence or testimonial evidence. The only evidence is that I never constructively or actually possessed any such device.

36.   I am entitled to have "the trier of fact consider[] all relevant evidence in reaching a conclusion as to guilt or innocence." *Rice v. McBride,* 967 F.Supp. 1097, 1103 (N.D.Ind. 1997), citing *Chavis v. Rowe,* 643 F.2d 1281, 1286 (7th Cir. 1981). There is simply no evidence of actual or constructive possession. The DHO Report falls short of evidencing any due process for failing to meet the "some evidence" test.

### *Conclusion*

37.   The DHO Report violated my due process rights by wrongly rejecting an admission by another that he was liable for possessing the contraband and that I never did. The DHO Officer relied on a finding that is not in the evidence (and is probably fanciful). Finally, the Officer failed to rely on reliable evidence – or any evidence at all, for that matter – in concluding that I constructively possessed some cellphones I never knew about because a Program Statement said that an inmate possesses any contraband in his cell as a matter of law.

38.  The Incident Report and DHO Report should be vacated.

WHEREFORE, good cause having been shown, my petition for writ of habeas corpus should be granted. The statements of fact made herein are true, under penalty of perjury.

WHEREFORE, good cause having been shown, this petition for writ of habeas corpus should be granted. The statements of fact made herein are true, under penalty of perjury.

Executed Oct. 11, 2023

Michael Faulkner
Reg. No. 03829-078
FCI Forrest City Medium
PO Box 3000
Forrest City, AR  72336

## CERTIFICATE OF SERVICE

I herewith certify pursuant to 28 U.S.C. § 1746 that I have transmitted a manually signed original of the foregoing *Petition for Writ of Habeas Corpus* by first class mail, postage prepaid, to the following:

> Office of the Clerk
> United States District Court
>  for the Eastern District of Arkansas
> Richard Sheppard Arnold United States
>  Courthouse
> 500 West Capitol Avenue
> Little Rock, Arkansas 72201

and I have served a true and complete copy of the same by depositing said document by first-class mail, postage prepaid, addressed to the following:

> Civil Desk
> U.S. Attorney's Office
> P. O. Box 1229
> Little Rock, AR 72203

The foregoing statements are true under penalty of perjury.

Executed Oct. 11, 2023

Michael Faulkner

# EXHIBIT 1

| BP-A0288 | **INCIDENT REPORT** | |
| --- | --- | --- |
| Dept. of Justice / Federal Bureau of Prisons | | 202 |

## Part I - Incident Report

| 1. Institution: **TEXARKANA FCI** | | | Incident Report Number: 3694315 | |
| --- | --- | --- | --- | --- |
| 2. Inmate's Name<br>**FAULKNER, MICHAEL** | 3. Register Number<br>**03829-078** | 4. Date of Incident<br>**09-28-2022** | | 5. Time<br>**1200 hrs** |
| 6. Place of Incident<br>**FCI Texarkana** | 7. Assignment<br>**UNASSG** | 8. Unit<br>**EAST** | | |
| 9. Incident<br>**108 -- POSSESSING A HAZARDOUS TOOL.** | | 10. Prohibited Act Code(s)<br>**108** | | |

11. Description Of Incident
    (Date: **11-04-2022**    Time: **1100 hrs**    staff became aware of incident)

On September 28, 2022, I, SIS Tech B. Buffington conducted a cell search of F03-268, which is assigned to inmates Michael Faulkner, Reg. No. 03829-078; Wesley Wilson, Reg. No. 12174-062 and Edward Gray, Reg. No. 12733-030. The following items were found in a homemade tray above the light fixture: (3) Samsung cell phones, (1) Netgear hot spot, (1) iPod touch, (2) unregistered MP3 players, (50) flat book stamps, (5) UBS thumb drives, (17) Micro SD cards, (12) SIM cards, (1) razor blade, (3) sets of headphones and several charging cables. All three inmates were placed in SHU and an SIS investigation was initiated. During an interview with inmate Wilson, he voluntarily admitted using all three cell phones. However, he was only able to provide the PIN number for one of the phones and could not access the other two cell phones.

On November 3, 2022, at the completion of the SIS investigation, it was determined since all the cell phones were found in a common area of the cell and inmate Wilson could not prove all the phones belonged to him, all inmates will receive an incident report for code 108.

| 12. Typed Name/Signature of Reporting Employee<br>**B Buffington** | | 13. Date And Time<br>**11-04-2022 1159 hrs** | |
| --- | --- | --- | --- |
| 14. Incident Report Delivered to Above Inmate By<br>(Type Name/Signature) | 15. Date Report<br>Delivered | | 16. Time Report<br>Delivered |

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of electronic forms, electronic filing, and electronic signatures to conduct office business.

Prescribed by P5270                    Replaces BP-S288.052

# EXHIBIT 2

# AFFIDAVIT

Regarding the contraband electronics found in my F-Unit cell on 9-28-2022 at FCI Texarkana, neither of my two roommates, Michael Blaine Faulkner, or Edward Eugene Gray Jr, ever used or possessed any of these items.

I managed the "stash spot" and held contraband electronics for myself and a number of other inmates in E and F Unit.

I accept full and complete responsibility for these contraband items.

Under penalty of perjury under the laws of the State of Texas and The United States of America, I do solemnly swear that the above is true and correct.

Wesley Ryan Wilson
11-4-2022

# EXHIBIT 3

 **BP-A0304** **DISCIPLINE HEARING OFFICER REPORT**

**Dept. of Justice / Federal Bureau of Prisons**

| | |
|---|---|
| Institution: **TEXARKANA FCI** | Incident Report Number: **3694315** |
| NAME OF INMATE: **FAULKNER, MICHAEL** | REG.NO.: **03829-078**    UNIT: **EAST** |
| Date of Incident Report: **11-04-2022** | Offense Code(s): **108** |
| Date of Incident: **09-28-2022** | |

Summary of Charges:

    **108 – POSSESSING A HAZARDOUS TOOL.**

---

**I.    NOTICE OF CHARGE(S)**

    **A.**   Advanced written notice of charge (copy of Incident Report) was given to inmate on **11-04-2022**   at **1238 hrs**   (by staff member) **A. Cruz**

    **B.**   The DHO Hearing was held on **11-17-2022**   at **1000 hrs**

    **C.**   The inmate was advised of the rights before the DHO by (staff member):
    **J.MCCLAIN**   on **11-08-2022**

    and a copy of the advisement of rights form is attached.

    **D.**   Delay in Process   **None**

**II.    STAFF REPRESENTATIVE**

    **A.**   Inmate waived right to staff representative:   [Yes] **X**    [No] _

    **B.**   Inmate requested staff representative and
    **NA**         appeared.

    **C.**   Staff Representative's Statement:
    **NA**

    **D.**   Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:
    **NA**

    **E.**   Staff representative **NA**      was appointed.

**III.   PRESENTATION OF EVIDENCE**

    **A.**   Inmate ( ) admits    ( **X** ) denies the charge(s).

    **B.**   Summary of Inmate Statement:
    **The cell phones don't belong to me.**

---

 **BP-A0304    DISCIPLINE HEARING OFFICER REPORT**

**Dept. of Justice / Federal Bureau of Prisons**

C.   Witnesses

1.   The inmate waived right to witnesses.  [Yes] ___    [No] **X**

2.   The following persons were called as witness at this hearing and appeared
     (Each witness name and statement listed below):
     **Inmate Wilson, Wesley Reg#12174-062 IR#3694320 stated, "Only 1 of the phones belonged to
     me. 2 of the other phones belonged to other inmates in the unit."**

3.   The following persons requested were not called for the reason(s) given
     (Each witness name and statement listed below):
     **NA**

4.   Unavailable witnesses were requested to submit written statements and
     those statements received were considered (Each witness name and
     statement listed below):
     **NA**

D.   Documentary Evidence. In addition to the Incident Report and
     Investigation, the DHO considered the following documents:
     **Incident Report - Photographs -- (BOP-IRPHO)**
     **Incident Report - SIS Reports -- (BOP-IRSIS)**

E.   Confidential information was used by DHO in support of his findings, but
     was not revealed to the inmate. The confidential information was documented
     in a separate report. The confidential information has been (confidential
     informants have been) determined to be reliable because:
     **NA**

IV.   FINDINGS OF THE DHO
      **X** A. The act was committed as charged.    _ C. No prohibited act was committed:
      _ B. The following act was committed:            Expunge according to inmate
                                                        discipline PS.

V.    SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations
      written documents, etc.)
      **Your due process rights were reviewed with you by the Discipline Hearing Officer (DHO) at the time
      of the hearing. You stated you understood your rights and had no documentary evidence to
      present. You did request a witness and you declined a staff representative. You then indicated you
      were ready to proceed with the hearing.**

      **The DHO found that on September 28, 2022, you committed the prohibited act of Possession of a
      Hazardous Tool - Cell Phone, Code 108. The element of this prohibited acts consists of: Possess -
      to have on one's person or under one's dominion or control.**

      **The evidence relied upon included:**

      **On September 28, 2022, I, SIS Tech B. Buffington conducted a cell search of F03-268, which is
      assigned to inmates Michael Faulkner, Reg. No. 03829-078; Wesley Wilson, Reg. No.**



**BP-A0304**    **DISCIPLINE HEARING OFFICER REPORT**

**Dept. of Justice / Federal Bureau of Prisons**

12174-062 and Edward Gray, Reg. No. 12733-030. The following items were found in a homemade tray above the light fixture: (3) Samsung cell phones, (1) Netgear hot spot, (1) iPod touch, (2) unregistered MP3 players, (50) flat book stamps, (5) UBS thumb drives, (17) Micro SD cards, (12) SIM cards, (1) razor blade, (3) sets of headphones and several charging cables. All three inmates were placed in SHU and an SIS investigation was initiated. During an interview with inmate Wilson, he voluntarily admitted using all three cell phones. However, he was only able to provide the PIN number for one of the phones and could not access the other two cell phones.

On November 3, 2022, at the completion of the SIS investigation, it was determined since all the cell phones were found in a common area of the cell and inmate Wilson could not prove all the phones belonged to him, all inmates will receive an incident report for code 108.

During the investigation you stated, "All electronics belong to Wilson."

During the UDC hearing you stated, "I had no contact with inmate Wilson's electronics."

Photographic evidence depicts: 3) Samsung cell phones, (1) Netgear hot spot, (1) iPod touch, (2) unregistered MP3 players, (50) flat book stamps, (5) UBS thumb drives, (17) Micro SD cards, (12) SIM cards, (1) razor blade, (3) sets of headphones and several charging cables.

During the DHO hearing, the incident report was read aloud to you and you stated, "The cell phones don't belong to me."

In deciding the issue, the DHO considered the reporting officer's eyewitness account in section 11 of the incident report noting while conducting a search of your assigned living area inside a light fixture a homemade tray was discovered containing, 3) Samsung cell phones, (1) Netgear hot spot, (1) iPod touch, (2) unregistered MP3 players, (50) flat book stamps, (5) UBS thumb drives, (17) Micro SD cards, (12) SIM cards, (1) razor blade, (3) sets of headphones and several charging cables. Since all the contraband was located in a common area, all inmate's assigned to the cell received an incident report. During the SIS investigation inmate Wilson stated all the contraband belonged to him and he provided the code for one of the cell phones. He then stated he did not have the codes to access the other phones but everything was his. Once SIS informed inmate Wilson his cellies would be receiving an incident report because he could not prove the other two cell phone belonged to him, he then changed his story to say he was holding the two phones for other inmates that lived in the housing unit. He submitted a written statement to the DHO stating, "I managed the "stash spot," and held contraband electronics for myself and a number of other inmates in E and F unit." Inmate Wilson was called as a witness during the DHO hearing and he stated, "Only 1 of the phones belonged to me. 2 of the other phones belonged to other inmates in the unit." The DHO considered your statement during the investigation, " All electronics belong to Wilson." The DHO considered your statement during the UDC hearing, "I had no contact with inmate Wilson's electronics." The DHO considered your statement during the DHO hearing, "The cell phones don't belong to me." The DHO advised you because inmate Wilson changed his statement multiple times during the course of the inmate discipline process, this lessoned his credibility before the DHO. The DHO notes, because inmate Wilson admitted two of the cell phones belonged to other inmates, there is no way for the DHO to determine who they belonged too. The fact the cell phones were found in a common area of the cell, makes all the inmates living there responsible. Program Statement 5270.09, Inmate Discipline Program, states, "It is your responsibility not to waste food, to follow the laundry and shower schedule, maintain neat and clean-living quarters, to keep your area free of contraband, and to seek medical and dental care as you may need it." Your assigned cell is under your dominion and control. Therefore, the inmates assigned to a cell are all responsible to keep the area free of contraband. Finally, the DHO considered the photographic picture illustrating the 3) Samsung cell phones, (1) Netgear hot spot, (1) iPod touch, (2) unregistered MP3 players, (50) flat book stamps, (5) UBS thumb drives, (17) Micro SD cards, (12) SIM cards, (1) razor



**BP-A0304    DISCIPLINE HEARING OFFICER REPORT**

**Dept. of Justice / Federal Bureau of Prisons**

blade, (3) sets of headphones and several charging cables.

Therefore, the DHO finds the greater weight of the evidence is sufficient to support you committed the prohibited act of Possession of a Hazardous Tool - Cell Phone, Code 108.

---

**VI.    SANCTION OR ACTION TAKEN**

108 (FREQ 1) - DIS GCT 41 DAYS, 108 (FREQ 1) - DS 45 DAYS, 108 (FREQ 1) - FF NVGCT 50 DAYS, 108 (FREQ 1) - LP COMM 365 DAYS, 108 (FREQ 1) - LP EMAIL 365 DAYS, 108 (FREQ 1) - LP PHONE 365 DAYS, 108 (FREQ 1) - LP VISIT 365 DAYS

---

**VII.   REASON FOR SANCTION OR ACTION TAKEN**

The DHO sanctioned you with disciplinary segregation, forfeit non-fully vested good conduct time and the maximum amount disallowance of good conduct time to motivate you towards more self-discipline. The DHO sanctioned you with loss of phone email, visits and commissary privileges to correct your inappropriate behavior. The DHO increased the sanctions against you due to the severity and level of the offense. The DHO believes the loss of privileges will have a significant impact in deterring future misconduct.  The DHO hopes these sanctions will correct your inappropriate behavior.

---

**VIII.  APPEAL RIGHTS:  X**  The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

---

**IX.    Discipline Hearing Officer**

| Printed Name | Signature | Date |
|---|---|---|
| A. GUZMAN | A. GUZMAN | 11-30-2022 |

DHO Report Delivered to Inmate by:

| Printed Name of Staff | Signature of Staff | Date & Time Delivered |
|---|---|---|
| T. Hahs | | 12-5-22  0800 |

---

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of electronic forms, electronic filing, and electronic signatures to conduct office business.

# EXHIBIT 4

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| From: | Faulkner, Michael B. | 03829-078 | F | FCI Texarkana |
|-------|----------------------|-----------|---|---------------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL** Appeal of Incident Report #3694315: Inmate Wilson claimed these items the moment they were found (9-28-2022). We didn't receive an Incident Report until 38-days later (11-4-2022). Due to either a technical or accoustic issue via the video-teleconference, the DHO apparently didn't hear Wilson's testimony correctly. Section III.C.2 of the DHO report is NOT what was said. Wilson unambiguously took full responsibility for the contraband, and he codified this in the Affidavit attached to the file at UDC (Exhibit A). As the DHO was in a hurry, I was unable to call his attention to the Affidavit myself. Regardless of any slight variation in Wilson's statements, the Affidavit clearly states that the contraband didn't belong to me. Furthermore, Wilson specifically told SIS who the phones belonged to. There is no requirement for an inmate to "prove" that contraband they claim is theirs, as that's obviously not realistically possible. Wilson had the only top bunk, and only he could access the light above his bunk. I have a bi-lateral shoulder injury. I can't even raise my arms above shoulder height (Exhibit B). That area was not "under (my) dominion and control", it was literally impossible for me to access. And this "assigned cell" wasn't even actually a cell, it's an open-pod arrangement in which over 80 people share the same common area. (continued)

| December 5th, 2022 | *Michael B. Faulkner* |
|--------------------|------------------------|
| DATE | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**

**RECEIVED**

DEC 09 2022

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

| DATE | REGIONAL DIRECTOR |
|------|-------------------|

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 1471678-R1

**Part C - RECEIPT**

CASE NUMBER: _____

| Return to: | | | | |
|------------|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| DATE | ☣ | SIGNATURE, RECIPIENT OF REGIONAL APPEAL |
|------|---|------------------------------------------|

BP-230(13)
JUNE 2002

Appeal of Incident Report #3694315 (Continued)

The Incident Report and DHO hearing was stretched beyond the facts in an attempt to make me somehow culpable for Wilson's contraband. I am well aware that SIS received bad information from bad informants, but it is an obvious violation of my rights to due process for those lies to be used for a finding of guilt. I've been severely punished, not for violating BOP Policy, but for crossing paths with vindictive inmates who mischaracterized Wilson's contraband as mine. I never used or possessed any of the contraband items. Accordingly, please expunge this Incident Report.

# EXHIBIT 5

```
MICHAEL BLAINE FAULKNER, 03829-078
FORREST CITY MED FCI     UNT: 2 GP     QTR: B03-219L
PO BOX 7000
FORREST CITY,  AR 72336
```

Received 3/28/23

03-01-2015

Regional Administrative Remedy Appeal No. 1147678-R1
Part B - Response

This is in response to your Regional Administrative Remedy Appeal
receipted December 9, 2022.  You are appealing a Discipline Hearing
Officer (DHO) action of November 17, 2022, for Code 108, Possession of
a Hazardous Tool.

The record of this disciplinary action reflects you were advised of
your rights and afforded the opportunity to exercise those rights in
accordance with Program Statement 5270.09, Inmate Discipline Program.
A review of the incident report, the investigation, the evidence, and
related documentation indicates there is sufficient evidence to
support the DHO's decision.

You allege you did not commit the prohibited act. You assert that the
DHO did not listen to the evidence you presented at the hearing which
cleared you of the charge.  Specifically, you state your witness
claimed ownership of all the electronics that were found in your cell.
A review of the record revealed the witness did indeed claim ownership
of the electronics, however, the DHO gave the greater weight to other
evidence provided by the institution.  The other evidence, which
included witness and staff statements, the SIS Investigative report,
and the electronics.  There was no violation of due process.

The DHO adequately detailed the evidence relied upon to conclude you
committed the prohibited act.  The DHO relied upon sufficient evidence
in reaching this conclusion.  The sanctions imposed are within policy
and commensurate with the finding you committed the prohibited act.
Further, you did not provide any additional evidence to support your
allegation.

Based on the above information, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the
Federal Bureau of Prisons, Office of General Counsel, 320 First
Street, N.W., Washington, D.C. 20534.  Your appeal must be received in
the Office of General Counsel within 30 days from the date of this
response.

FEB 1 3 2023
_____
Date

Heriberto H. Tellez
Regional Director

# EXHIBIT 6

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __FAULKNER  MICHAEL  B__  __03829-078__  __2 GP__  __FCI FORREST CITY M__
     LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT              INSTITUTION

**Part A - REASON FOR APPEAL**

The findings of the DHO are flawed in two material respects.

FIRST (see next page - form is defective)

__4/4/23__
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE                                    GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE              CASE NUMBER: _____

**Part C - RECEIPT**

                                        CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

__DATE__                    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN                                                          BP-231(13)
                                                                JUNE 2002

Faulkner, Michael
Reg. No. 03829-078
BP-11
Page 2

The findings of the DHO are flawed in two respects.

First, the "common area" of an inmate's living space includes all those spaces in which every inmate in the living space has a nonexclusive right to occupy. The contraband electronics were located inside a light fixture, a space that an inmate is not authorized to be. See Prohibited Acts 208, 218, 318. The inside of a light fixture is no more "common area" than would be the inside of a telephone or inside the wall behind a shower fixture.

Second, the DHO report states that "because inmate Wilson admitted that two of the cell phones belonged to other inmates, there is no way for the DHO to determine who they belonged too *[sic]*…"

First, the "common area" of an inmate's living space includes all those spaces in which every inmate in the living space has a nonexclusive right to occupy. The contraband electronics were located inside a light fixture, a space that an inmate is not authorized to be. *See Prohibited Acts* 208, 218, 318. The inside of a light fixture is no more "common area" than would be the inside of a telephone or inside the wall behind a shower fixture.

Second, the DHO report states that "because inmate Wilson admitted that two of the cell phones belonged to other inmates, there is no way for the DHO to determine who they belonged too *[sic]*…"

Evidence supporting a prison disciplinary sanction that deprives an inmate of a protected liberty interest must have some indicia of reliability. *Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001) ("The 'some evidence' standard is met where the only evidence was supplied by a confidential informant as long as there has been some examination of indicia relevant to [the informant's] credibility.") (internal quotation marks omitted); *Meeks v. McBride*, 81 F.3d 717 (7th Cir. 1996) (holding that the some evidence" standard was not satisfied when the toxicology report showing drug use contained the wrong inmate identification number and another inmate in the same facility had the same name); *Zavaro v. Coughlin*, 970 F.2d 1148 (2d Cir. 1992) (reversing disciplinary sanction that was based on "no reliable evidence whatsoever" that inmate participated in cafeteria riot).

Here, the DHO has admitted that it is impossible to determine to whom the cell phones belonged (other than the one belonging to Inmate Wilson). In other words, there is no evidence that I possessed the cell phones, other than that they were hidden in a space not authorized for inmate access located in the common area of living space I shared with another person who did admit to owning one cell phone and owning or possessing two others.

Because the DHO finding is supported by no evidence of ownership or possession, the incident report must be rejected.