UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

MICHAEL BLAINE FAULKNER                                                                PETITIONER
Reg #03829-078

V.                          Case No. 2:23-CV-00210-LPR-BBM

C. GARRETT, Warden,
FCI Forrest City Medium                                                                RESPONDENT

### RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

I.     INTRODUCTION

On October 16, 2023, Petitioner Michael Blaine Faulkner ("Faulkner"), an inmate in the Federal Correctional Institution in Forrest City, Arkansas ("FCI-Forrest City"), filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and Memorandum in Support.[1] (Docs. 1, 2). Faulkner challenges a Bureau of Prisons ("BOP") disciplinary

---

[1] On May 29, 2012, the United States District Court for the Northern District of Texas sentenced Faulkner to 360 months' imprisonment for: (1) conspiracy to commit wire and mail fraud and (2) obstruction. (Doc. 7-1 at 1). Faulkner currently serves that sentence.

sanction.[2] On November 15, 2023, Respondent C. Garrett ("Garrett") filed a Response. (Doc. 7). Faulkner did not file a Reply. Thus, the issues are joined and ready for disposition. For the reasons set forth below, the Court recommends that Faulkner's Petition be dismissed with prejudice.

## II. DISCUSSION

### A. Factual Background

On September 28, 2022, while Faulker was incarcerated at the Federal Correctional Institution in Texarkana, Arkansas ("FCI-Texarkana"), BOP Officer B. Buffington searched a cell belonging to Faulkner and two other inmates, Wilson and Gray.[3] (Doc. 2 at 26). Officer Buffington's Incident Report recounts the search:

> On September 28, 2022, I, SIS Tech B. Buffington, conducted a cell search of F03-268, which is assigned to [Faulkner, Wilson, and Gray]. The following items were found in a homemade tray above the light fixture: (3) Samsung cell phones, (1) Netgear hot spot, (1) iPod touch, (2) unregistered MP3s, (50) flat book stamps, (5) UBS [sic] thumb drives, (17) Micro SD cards, (12) SIM cards, (1) razor blade, (3) sets of headphones and several charging cables. All the inmates were placed in SHU and an SIS Investigation was initiated. During an interview with Inmate Wilson, he voluntarily admitted using all three cell phones. However, he was only able to provide the PIN number for one of the phones and could not access the other two cell phones. On November 3, 2022, at the completion of the SIS Investigation, it was determined since all the cell phones were found in a common area of the cell and Inmate Wilson could not prove all the phones belonged to him, all Inmates will receive an incident report for Code 108.[4]

---

[2] On November 6, 2023, Attorney Reggie Koch entered his appearance on Faulkner's behalf. (Doc. 6).

[3] While Faulkner is currently assigned to FCI-Forrest City, all relevant events occurred while Faulkner was assigned to FCI-Texarkana. (Doc. 2 at 2).

[4] BOP regulations outline all prohibited acts. *See* 28 C.F.R. § 541.3. Prohibited Act 108 addresses possession of a hazardous tool, including electronic devices.

*Id.*

Officer Buffington charged Faulkner with a Code 108 violation for possession of contraband. (Doc. 2 at 26). On November 4, 2022, after the investigation concluded, Faulkner received advance written notice of his charge. *Id.* at 30. On the same day, Wilson signed an affidavit stating: (1) Faulkner and Gray never used or possessed the items; (2) Wilson managed the "stash spot" and held contraband electronics for himself and "a number of other inmates in E and F Unit," and (3) Wilson took "full and complete responsibility for [the] contraband items." *Id.* at 28.

On November 17, 2022, Faulkner appeared before Detention Hearing Officer ("DHO") A. Guzman for a disciplinary hearing. (Doc. 2 at 30). During the hearing, Faulkner denied the charge and testified that "[t]he cell phones don't belong to me." The DHO also considered Faulkner's previous statement that he "had no contact with Inmate Wilson's electronics." *Id.* Wilson testified, stating, "Only one of the cell phones belonged to me. Two of the other phones belonged to other inmates in the unit." *Id.* at 31.

After the hearing, the DHO prepared a written report. (Doc. 2 at 30–33). In that report, the DHO stated that Wilson's changed story lessened his credibility. *Id.* at 32. The DHO also stated:

> The fact that the cell phones were found in a common area of the cell[] makes all inmates living there responsible. Program Statement 5270.09, Inmate Discipline Program, states, "It is your responsibility not to waste food, to follow the laundry and shower schedule, maintain neat and clean-living quarters, to keep your area free of contraband, and to seek medical and dental care as you may need it." Your assigned cell is under your dominion and control. Therefore, the inmates assigned to the cell are all responsible to keep the area free of contraband.

*Id.* Considering Wilson's statements, Faulkner's statements, Officer Buffington's report, and photographs, the DHO found that Faulkner committed the incident as charged. *Id.* at 33. Consequently, Faulkner lost 41 days of good time credits. *Id.*

On December 5, 2022, Faulkner received a copy of the DHO's report and a notice of his right to appeal. (Doc. 2 at 33). On the same day, Faulkner submitted an administrative appeal of the DHO's finding. *Id.* at 35. On February 13, 2023, the Regional Director denied Faulkner's appeal. *Id.* at 39. Faulkner appealed to the Central Office on April 4, 2023. *Id.* at 41. According to Faulkner, as of October 11, 2023, the Central Office has not responded to his appeal. *Id.* at 8. Faulkner then filed this Petition, challenging his disciplinary conviction and related loss of good time credits.

### B. Legal Standard

A disciplinary conviction involving a loss of good time credits implicates a liberty interest protected by the Due Process Clause. *Wolff v. McDonnell*, 418 U.S. 539, 555–58 (1974). A prisoner facing a loss of good time credits, however, is not entitled to the same procedural protections that attend a criminal prosecution. *Id.* at 556. Instead, in the prison-disciplinary context, due process requires only the following minimum procedural protections: (1) written notice of the disciplinary charges, at least 24 hours in advance; (2) an opportunity to call witnesses and present a defense; and (3) a written statement from an impartial decisionmaker identifying the evidence relied upon and the reasons for the disciplinary action. *Id.* at 564–66.

In addition to these procedural requirements, due process also requires "some evidence" in the record to support the disciplinary action. *Superintendent, Massachusetts*

*Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). When reviewing a record for "some evidence," a court's review is limited and "does not require an examination of the entire record, independent assessment of witness credibility, or weighing of the evidence." *Id*. at 455. Instead, "the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. (emphasis added). Under *Hill*, the evidence need not logically preclude other possible conclusions. *Id.* at 457. For example, a single disputed incident report constitutes some evidence. As the Eighth Circuit has held:

> [D]isciplinary actions may be taken–and often they are–based *only on a guard's report. Even when there is substantial evidence to the contrary, the committee may find a guard's report to be credible* and therefore take disciplinary action. However, the *Wolff* hearing ensures that the inmate has an opportunity to persuade an impartial decisionmaker, who must give written justification for his decision, that discipline is not warranted. This is the interest protected by the Constitution.

*Hartsfield v. Nichols* 511 F.3d 826, 831 (8th Cir. 2008) (quoting *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993) (emphasis added in *Hartsfield*)). Thus, if the violation is found by an impartial decisionmaker, an officer's disciplinary violation report, "even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation[.]" *Id.*

Finally, as relevant to Faulkner's claims, the Eighth Circuit has accepted a "collective responsibility theory" for contraband found in a shared area. *See, e.g.*, *Flowers v. Anderson,* 661 F.3d 977, 980–81 (8th Cir. 2011) (upholding disciplinary conviction under *Hill* where staff member discovered weapons in a common area for which two inmates shared responsibility); *Mason v. Sargent*, 898 F.2d 679, 680 (8th Cir. 1990)

5

(holding contraband found in a shared locker constituted some evidence against inmate, even though another inmate admitted culpability).

### C. The Disciplinary Hearing Procedures Did Not Violate Faulkner's Due Process Rights.

The Court finds no procedural due process violations in this case. The DHO's Report reflects that Faulkner: (1) received advanced notice of the charge before the disciplinary hearing; (2) had an opportunity to call witnesses and present documentary evidence in his defense; and (3) received a written statement from an impartial decisionmaker identifying the evidence relied on and the reasons for the disciplinary action. (Doc. 2 at 30–33).

While Faulkner alleges that the DHO relied on evidence "outside the record" because the DHO's report discussed Wilson's motives, the Court disagrees. Specifically, Faulkner takes issue with the following section of the DHO's report:

> During the SIS Investigation, Inmate Wilson stated that all contraband belonged to him, and he provided the access code for the one of the cell phones. He then stated he did not have the codes to access the other phones, but everything was his. [O]nce SIS informed Inmate Wilson his cellies would be receiving an incident report because he could not prove the other two cell phone [sic] belonged to him, he then changed his story to say he was holding the two phones for other Inmates that lived in the housing unit.

(Doc. 2 at 32).

According to Faulkner, the averment about his cellmates "is never made . . . in any of the evidence provided to me or in the record," lacks evidentiary foundation, and amounts to "speculation." (Doc. 2 at 14, 16). But the DHO's "speculation" about why Wilson changed his story is a permissible inference drawn from: (1) Wilson's first story about

6

using all three phones; (2) Wilson's inability to unlock two of the three phones; (3) Officer Buffington's statement that the investigation was completed on November 3, 2022; and finally, (4) Wilson's November 4, 2022 Affidavit (written the same day Faulkner received notice of the charge). After making reasonable inferences, the DHO found that Wilson's actions lessened Wilson's credibility. This determination did not violate Faulkner's due process rights.

Accordingly, Faulkner received adequate procedural protections pursuant to *Wolff*. The remaining question is whether "some evidence" in the record supports the DHO's decision.

### D.   The Disciplinary Decision is Supported By "Some Evidence."

The DHO relied on several pieces of evidence in reaching a decision in this case: (1) Officer Buffington's report, (2) Wilson's statements, (3) Faulkner's statements, and (4) photographs. (Doc. 2 at 32–33). The DHO also cited BOP policy, stating that an inmate must "keep your area free of contraband." *Id.* at 32. This Court need not examine the entire record, assess the credibility of witnesses, or reweigh the evidence. Instead, this Court must determine whether "some evidence" supports the DHO's decision.

Here, the "some evidence" standard is met. Officer Buffington's report *alone* constitutes some evidence under a collective responsibility theory. *See Flowers*, 661 F.3d at 980–81. According to the report, Officer Buffington found the contraband in Faulkner's shared cell above a light fixture. *Id.* at 26. Additionally, Officer Buffington found *three* cell phones in a cell occupied by *three* inmates. *Id.* Wilson could only access one of the phones. *Id.* Thus, the record contains some evidence to support the DHO's finding that

7

Faulkner possessed the contraband. Faulkner's arguments to the contrary are unavailing. Below, the Court addresses each of Faulkner's specific arguments in turn.

First, Faulkner takes issue with the DHO's rejection of Wilson's testimony. (Doc. 2 at 8). Faulkner argues that Wilson never contradicted his initial admission that he was responsible for all of the contraband and "stated under oath that neither Mr. Gray nor I ever possessed [the phones]." *Id.* at 13. However, as outlined above, the DHO considered Wilson's testimony, along with his other statements made during the SIS Investigation, and made credibility determinations. It is not this Court's job to reassess the credibility of witnesses, but to determine whether "some evidence" supports the DHO's decision, which it does. *Hill*, 472 U.S. at 455. Even if the DHO's conclusion is not the only logical conclusion, some evidence supports the conclusion reached. Thus, Faulkner's first challenge to the DHO's decision is unavailing.

Second, Faulkner challenges the reliability of Officer Buffington's report because Officer Buffington found the contraband "inside the light fixture, a space that an inmate is not authorized to be." (Doc. 2 at 18). Faulkner cites to other prohibited acts, such as altering government property, to bolster this assertion. To begin, Faulkner first raised this argument on appeal to the BOP's Central Office. *Id.* at 42. BOP regulations provide that an "inmate may not raise in an Appeal issues not raised in the lower level filing." 28 C.F.R. § 542.15(b)(2). Thus, it does not appear that Faulkner properly exhausted his remedies as to

this claim.[5] Regardless, this argument is meritless pursuant to the Eighth Circuit's ruling in *Flowers*, 661 F.3d at 980–81.

In *Flowers*, BOP staff searched a shared cell and discovered contraband above the door and beneath the ceiling. 661 F.3d at 978–79. A DHO convicted two inmates, and the district court affirmed the conviction. *Id.* at 979–80. On appeal, the inmates disputed the DHO's "some evidence" finding, arguing that officers found the contraband *above* the ceiling tiles and outside their "area of responsibility." *Id.* at 981. Petitioners also argued that officers found the contraband in an area they could not access without breaking BOP rules. *Id.* The Eighth Circuit found that some evidence, including an incident report, supported the finding that weapons were found: (1) above the door and (2) in a common area. *Id.* Because some evidence supported that conclusion, the Eighth Circuit declined to address the larger issue about contraband *outside* an inmate's cell: "We thus need not address how the prison may proceed if contraband is discovered in an area that is outside an inmate's living area and off-limits to inmates." *Id.* As in *Flowers*, some evidence, including a report and photographs, supports the conclusion that BOP staff found the

---

[5] The Eighth Circuit has held that jurisdiction to decide a petitioner's challenge to his sentence was not affected by his failure to exhaust because the exhaustion requirement was "judicially created, not jurisdictional." *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007).

contraband in a common area of Faulkner's shared cell. Faulkner *does not* argue that Officer Buffington found the contraband outside of his cell, and *Flowers* controls.[6]

Additionally, other courts addressing the issue of hidden contraband in a jointly occupied cell routinely uphold the DHO's findings when the hidden contraband is found in a *common area*. *See Gebbia v. Holt*, No. CIV. 4:06-CV-2171, 2007 WL 1893721, at *6 (M.D. Pa. July 2, 2007) ("Although there was no direct evidence that the knife [in a desk light fixture that the Plaintiff asserted he had no control over] belonged to the petitioner, given that the knife was found in the petitioner's cell the DHO's decision that the petitioner was guilty of possession of a weapon is supported by some evidence."); *Bradley v. Outlaw*, No. 2:11-CV-00072-DPM, 2011 WL 2601571, at *3 (E.D. Ark. June 13, 2011), *report and recommendation adopted*, 2011 WL 2604727 (E.D. Ark. July 1, 2011) (holding some evidence supported DHO's decision when the hidden contraband was found in a bottom compartment of the toilet in a common area that the Plaintiff alleged he did not have access to).[7]

---

[6] While Faulkner alleges that the phones were not in a common area, in his BP-11 Central Office Administrative Remedy Appeal, he states, "In other words, there is no evidence that I possessed the cell phones, other than they were hidden in a space not authorized for inmate access located *in a common area of the living space* I shared with another person who did admit to owning one cell phone and owning or possessing two others." (Doc. 2 at 42) (emphasis added). Thus, even though Faulkner disputes the meaning of "common area," his appeal appears to admit the cell phones were found in a *common area.*

[7] Additionally, a disciplinary report can provide "some evidence," even where an inmate argues that the common area is a "dorm setting," and the contraband is found behind a wall outlet—similar to a light fixture in a wall. *Coleman v. Yates,* No. 2:22-CV-00064-BSM-JJV, 2022 WL 4349652, at *2 (E.D. Ark. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4316298 (E.D. Ark. Sept. 19, 2022).

10

Because the DHO's decision to find Faulkner guilty is supported by "some evidence," Faulkner's due process challenge fails.[8]

### E. Faulkner's Motion for Scheduling Order for Evidentiary Hearing and Time to Propound Discovery

On January 9, 2024, Faulkner filed a Motion for Scheduling Order for Evidentiary Hearing and Time to Propound Discovery ("Discovery Motion"). (Doc. 9). Faulkner's Motion "seeks a scheduling order such that the parties can engage in additional discovery and set this matter for an in-court evidentiary hearing." *Id.* at 2. For the reasons discussed below, the Court recommends denial of the Discovery Motion because Faulkner is not entitled to discovery or an evidentiary hearing.

According to the Discovery Motion, Faulkner's counsel recently interviewed Wilson, who now goes by "Sebastian Valence." (Doc. 9 at 1). Faulkner alleges that "Wilson's involvement in the case is key, as Wilson is the person who admitted that the contraband belonged to him alone and that his cellmates (including Petitioner) had no knowledge or involvement." *Id.* Faulkner also contends that Wilson's information is "central to Petitioner's case and has led to the need to seek more information from the Respondents (in the form of discovery)." *Id.* at 2.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

---

[8] The Court notes that Faulkner's Regional Remedy Appeal mentions that he physically could not access the light and multiple inmates share the same common area. (Doc. 2 at 35). The Court agrees with the Respondent that these self-serving allegations *not* mentioned in the DHO report—without more—do not disrupt the outcome in the case. The DHO's report explicitly lists the evidence relied upon. *Id.* at 31–33.

11

Instead, Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Corpus Rule(s)") allows courts to permit discovery upon a fact-specific showing of good cause. Under Rule 6(a), "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."[9]

In determining whether a petitioner has shown good cause, a court must consider the essential elements of the substantive claim and evaluate whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy,* 520 U.S. at 908–09 (quoting *Harris v. Nelson,* 394 U.S. 286, 300 (1969)). Additionally, a petitioner requesting discovery "must provide reasons for the request," and "must also include any proposed interrogatories and requests for admission, and must specify any requested documents." Habeas Corpus Rule 6(b).

First, Faulkner's Motion does not specifically indicate what discovery he seeks. Instead, Faulkner generically requests discovery based on an interview with Wilson/Valence but does not state what information, if any, Wilson/Valance would add for the Court's consideration that is not already a part of the record. Second, even if the Court understood the nature of the discovery requested, it is unclear how such discovery could "demonstrate that he is entitled to relief." Under the law, this Court is only to assess whether "some evidence" in the record supports the DHO's finding of guilt. *Hill*, 472 U.S. at 454.

---

[9] The Habeas Corpus Rules Governing § 2254 Cases also apply to § 2241 proceedings. Habeas Corpus Rule 1(b).

As discussed above, sufficient evidence in the record—including Officer Buffington's Report—supports the DHO's decision in this case. Even though Faulkner disputes the report's findings, the report still suffices as some evidence.[10] Discovery will not change the Court's analysis. Accordingly, Faulkner has not demonstrated good cause to warrant discovery.

Faulkner's Discovery Motion also requests an evidentiary hearing. (Doc. 9 at 2). However, "dismissal of [a] habeas petition without a hearing is proper where . . . the dispute can be resolved on the basis of the record." *Wallace v. Lockhart*, 701 F.2d 719, 729–30 (8th Cir. 1983) (citing *Lindner v. Wyrick*, 644 F.2d 724, 729 (8th Cir. 1981)). This Court can resolve Faulkner's Petition based on the current record. Accordingly, an evidentiary hearing is not warranted. *See Rivera v. Hollingsworth*, 103 F. App'x 74, 75 (8th Cir. 2004) (unpublished) (holding district court did not abuse its discretion in denying a § 2241 habeas Petitioner's request for an evidentiary hearing) (citing *Newton v. Kemna*, 354 F.3d 776, 785 (8th Cir. 2004)).

For these reasons, the Court recommends denial of Faulkner's Discovery Motion (Doc. 9).

---

[10] This is true even if, as Faulkner's BP-10 Regional Administrative Remedy Appeal claims, the DHO misquoted or misheard Wilson at the hearing. (Doc. 2 at 35). To the extent Wilson's statements directly dispute the report, the report is still "some evidence." For example, the report did not misidentify the occupants of the cell, as a report potentially misidentified an inmate in *Meeks v. McBride*—a case cited by Faulkner. 81 F.3d 717, 721 (7th Cir. 1996).

## III. CONCLUSION

IT IS THEREFORE RECOMMENDED THAT:

1. Faulkner's Petition for a Writ of Habeas Corpus (Doc. 1) be DISMISSED with prejudice, and the requested relief be DENIED.

2. Faulkner's Motion for a Scheduling Order for Evidentiary Hearing and Time to Propound Discovery (Doc. 9) be DENIED.

DATED this 10th day of May, 2024.

_____
UNITED STATES MAGISTRATE JUDGE